Bradley, J.
While the evidence was by no means conclusive that the property was obtained by the defendant, Freelove, of the plaintiff by fraud, it was sufficient to justify and support the conclusion to that effect. The jury were also permitted by the evidence to find that the plaintiff’s effort to reclaim the property was seasonably made by him, and that there was a demand made of the defendant, Ranney, and refusal by him to allow the plaintiff to take the property. This demand was not made at the farm, but some roñes from it and at the city of Auburn. The defendant had the right to a reasonable time to determine whether he would or not comply with the request, or to decline then to express any purpose in that respect; he did not, however, assume such position, but expressly declined to permit the plaintiff to take this property. This was evidence sufficient to justify the finding by the jury of conversion by the defendant if they came *426 to the conclusion that the plaintiff was entitled, to the possession of it -at the time of such demand. The refusal to permit the plaintiff to take the property may properly be construed as a denial of his right to do so, and as a claim by the defendant of his right to dominion over it to the exclusion of the plaintiff. Richards v. Pitts’ Agricultural Works, 37 Hun, 1, and cases cited.
Assuming as we do in view of the verdict that the sale by the plaintiff was obtained by the fraudulent representations of Freelove, it was voidable at the election of the plaintiff. And his remedy to seek restoration of the property was not defeated by the transfer to the defendant, Ranney, unless the latter was a bona fide purchaser. The burden to establish such relation for his protection was with him. Stevens v. Brennan, 79 N. Y., 254. This he sought to do by introducing the bill of sale to him which expressed a consideration as paid and received of $3,000. And he testified that the payments made and existing liabilities specified amounted to that sum, of which the cash payments were two sums of $370 and $1,500. And his evidence of the payment of the latter sum was supported by the evidence of his wife. If the sale to him was made and taken solely for the purpose of vesting title in him, such payment, if in fact made on account of the purchase price, would be sufficient to establish his purchase as made in good faith for value, and give protection to his title as against the plaintiff, as there is no evidence that he was then advised of the circumstances of Freelove’s purchase, and he was not required to make any inquiry into them. Parkers. Conner, 93 N. Y., 118.
But, in view of the relation of the defendant Ranney to the action, his evidence and that of his wife, although uncontradicted by other evidence, was not necessarily conclusive of the fact to which they testified. And all the circumstances attending the transaction between the defendants shortly before Freelove left, the secret manner in which they were conducted and the alleged effort to conceal his departure in the night time, with the knowledge of the defendant Ranney, the time and manner of the disposition made by the latter of most of the property -taken by him under the bill of sale, and his statements made of the purpose of Freelove to return, were considerations submitted to the jury upon the question of purpose of the alleged sale by Freelove to Ranney. Any one of them alone could not have had much force, but all taken together they may have characterized each other, so as a whole to have justified the conclusion that the bill of sale and lease, with the accompanying circumstances of purchase and payment, were designed as a contrivance to give cover to the property *427 rather than to constitute a bona fide sale and purchase of it. The jury have found against the defendants upon that question, and the evidence and the inferences allowable from it seem to warrant and support that conclusion. This was, as between the defendants, a sale by Freelove to Ranney, and assuming that the latter did pay the purchase money, as testified by him, it is contended that although he may not have been a bona fide purchaser so as to protect his purchase as against Freelove’s creditors, his title may, nevertheless, be protected as against the plaintiff, who was not a creditor and did not seek relief as such. And in that view the defendants requested the court to charge “that if the defendant Ranney did purchase and pay a valuable consideration for the property of Freelove, without notice of the fraud claimed by plaintiff to have been practiced upon him, he is a bona fide purchaser so far as this case is concerned, and the intention with which Freelove sold to Ranney is not material in such case.” And the court declined to so charge except as charged, and the defendants excepted. It may be true that the sale may have been fraudulent as against the creditors of Freelove, and effectual as against the plaintiff, who was proceeding upon the ground that by reason of the fraudulent pretenses of his vendee, no title passed to the latter. We think the plaintiff was not concluded by the appearance of the transaction between the defendants, but he was at liberty to inquire into its purpose, and see whether it was in fact intended as a sale by Freelove to Ranney. It was in that view that the court had charged the jury that it was “not sufficient to show that this• property was purchased with the intention to defraud the creditors of Free-love, because the plaintiff is not in position to take advantage of such intention, and to charge 't as constituting want of good faith ; but if this was a mere pretended purchase, if Ranney never meant to buy that property and make it his own, but merely meant to get a pretended prima facie title to it, in order to enable him to dispose of it for the benefit of Freelove, then Ranney was not a bona fide purchaser of the property as to anybody, and certainly not as to the true owner, who had-been induced to part with possession of it by fraud.”
The question submitted in this respect was whether the transaction was in fact a sale and purchase of the property, and the jury were instructed that for the purpose of that inquiry, they were at liberty “to look beneath the instrument and behind it, and say whether the transaction was what it purported to be.” And that in this respect they must be governed by the evidence, that fraud would not be presumed. The inference was justified by the evidence *428 that the form and appearance of sale and purchase given to the transaction between the defendants did not represent its purpose, that the title was placed ill Ranney to aid the conversion of the property into money for the benefit of Freelove, and although the leading reason for it was to protect it against his creditors, the situation was no less-available to the plaintiff.
The view taken is that the proposition submitted by the court to the jury was justified by the evidence and the conclusion upon it was permitted in support of the action. The subject-matter of the request before referred to, made by the defendant to charge, was substantially embraced, within the terms of the charge of the court as before made, that the plaintiff could not take the property from Ranney or recover if he was a bona fide purchaser of it for value. And the question whether he was such, was in various-forms charged. And the right of the plaintiff to recover was made to depend upon the finding of the fact that Ranney was not such purchaser. The court was not required to repeat what had before been substantially said in the charge to the jury. The exception to such refusal to charge does not seem to have been well taken.
The refusal to charge that there was no evidence to justify the jury to find ‘ ‘ that the purchase evidenced by the bill of sale was not the entire contract as to the personal property,” was not error.
This proposition has before been considered. It is true' that it is the only evidence of a contract in support of the sale, but that it embraced or fully expressed the purpose of the parties in making the bill of sale is another inquiry which arose out of the circumstances surrounding, preceding and following the transaction of making that instrument. And that inquiry does not depend upon the fact that as between the parties to it, they would be concluded by its terms.
In a controversy between them upon the evidence appearing in the record here it would be treated as the entire contract of sale, but that fact does not necessarily govern the rights between the parties to this action. 1 Greenl. Ev., § 279; McMaster v. Insurance Company, 55 N. Y., 223; Brown v. Thurber, 77 id., 613.
The fact as such that Freelove was indebted at the time he left in December, was not important, but it was competent as bearing upon the question of his motive of purpose in disposing of his property and leaving in the manner that he did.
This would have been admissible for a like purpose in an action in the nature of a creditor’s bill, and while the right of the plaintiff’s action rests upon a different foundation *429 and is supported by a different principle, the reasons which would make such evidence competent in the former, apply to some extent to this action. They both may be supported by the purpose to cover by the alleged sale and purchase of the property in view.
The objection to the account against Freelove on the account book of Dr. Powers, deceased, was general. And if it had specified the defect in the preliminary evidence might, perhaps, been obviated. The exception to the exclusion of the evidence of defendant Ranney offered by way of explanation of specific imputations against his character which a witness called to impeach stated he had heard, were not well taken. The truth or falsity of the rumors was not the proper subject of evidence upon the inquiry concerning his reputation. That depended upon the estimation of his character, founded upon what was said of him in the community. The right to test on cross-examination the evidence that the general character of a witness is not good, goes to the inquiry into the particular charges heard by the impeaching witness, and the character of such specific imputations, but not to the question whether they are or are not true.
The case of Stape v. People (85 N. Y., 390), goes no further than that. The evidence of the witness on his redirect examination by the plaintiff in respect to such specific charges heard by him, was competent only as supplementary to the cross-examination in which he was asked if he had heard any other charges than those mentioned, and having answered that he had not, his attention was not erroneously called by the further examination to those referred to by him.
The main questions of fact upon the merits were not free from difficulty, _ as the facts did not rest wholly in evidence direct and explicit, but were dependent much upon deductions and inferences which it furnished. The case properly went to the jury upon all the facts essential to the cause of action. The exceptions in that respect do not, nor do any of the exceptions appear to have been well taken.
The motion for a new trial should be denied, and judgment ordered on the verdict.
Barker and Haight, JJ., concur.